Lauren M. Hausman (CA Bar No. 349514)
**COPYCAT LEGAL PLLC**
113 N San Vicente Blvd
Suite 232
Beverly Hills, CA 90211
T: (877) 437-6228
E: lauren@copycatlegal.com

Attorney for Plaintiff

OTTO ARCHIVE, LLC

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| OTTO ARCHIVE, LLC,<br><br>Plaintiff,<br><br>v.<br><br>SNYDER-DIAMOND and VIKING RANGE, LLC f/k/a MIDDLEBY RESIDENTIAL, LLC,<br><br>Defendants. | Civil Action No. 2:26-cv-12627<br><br>**COMPLAINT** |

Plaintiff OTTO Archive, LLC ("Plaintiff") sues defendants Snyder-Diamond ("Snyder") and Viking Range, LLC f/k/a Middleby Residential, LLC ("Viking Range") (collectively, the "Defendants"), and alleges as follows:

## THE PARTIES

1. Plaintiff is a limited liability company organized and existing under the laws of the State of New York with its principal place of business located in New York County, New York.

2. Snyder is a corporation organized and existing under the laws of the State of California with its principal place of business located at 1399 Olympic Blvd, Santa Monica, CA 90404. Snyder's agent for service of process is Russell Diamond, 1399 Olympic Blvd, Santa Monica, CA 90404.

3. Viking Range is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business located at 1400 Toastmaster Drive, Elgin, IL 60120. Viking Range's agent for service of process is C T Corporation System, 208 SO LaSalle Street, Suite 814, Chicago, IL 60604.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

5. This Court has personal jurisdiction over Defendants because they have maintained sufficient minimum contacts with this State such that the exercise of personal jurisdiction over them would not offend traditional notices of fair play

and substantial justice.

6. Venue properly lies in this district pursuant to 28 U.S.C. § 1400(a) because Defendants or their agents reside or may be found in this district. "The Ninth Circuit has interpreted Section 1400(a) to mean that venue is proper in any judicial district in which the defendant would be amenable to personal jurisdiction." Righthaven LLC v. Inform Techs., Inc., No. 2:11-CV-00053-KJD-LRL, 2011 U.S. Dist. LEXIS 119379, at *8 (D. Nev. Oct. 14, 2011) (citing Brayton Purcell LLP v. Recordon & Recordon, 606 F.3d 1124, 1128 (9th Cir. 2010)).

## FACTS

### I. Plaintiff's Business

7. Plaintiff is a global photography distribution network representing over 30 master contemporary photographers. Plaintiff licenses design, architectural and interior imagery of preeminent architects and designers. Its collection also features unique locations, landscapes, and industrial images.

8. With an unparalleled focus on customer focus and premiere imagery, Plaintiff's commitment to clients and photographers sets it apart from other agencies.

9. Plaintiff provides the environment, business sensibilities, and experience within syndication that its clients seek as an alternative to traditional

corporate agencies.

10. Plaintiff maintains a commercial website (https://www.ottoarchive.com/) which describes the photography services offered by Plaintiff, offers a list of the photographers it represents including a sample of some of their imagery, and invites prospective customers to contact Plaintiff to arrange for licensing

## II. The Work at Issue in this Lawsuit

11. Bjorn Wallander, Eric Piasecki, Stephen Kent Johnson, William Waldron, Jenna Peffely, and Kelly Marshall are some of the many renowned photographers represented by Plaintiff.

12. Mr. Wallander dedicates much of his craft to portrait and interior photography, and over the last decade has contributed to publications including Architectural Digest, Elle Décor, Harper's Bazaar, WSJ Magazine, Vogue Brazil, Casa Vogue, Man of the World, Departures, Veranda, Martha Stewart, Oprah, House Beautiful, New York Magazine, Flaunt, Dwell, and Real Simple. He has also shot for Ralph Lauren, American Express, Tribeca Film Festival, Thompson Hotels, Shelborne Hotel, Wedgwood, Infiniti and Pottery Barn.

13. Mr. Piasecki is a Cape Cod native who is based in New Mexico and New York City. He contributes regularly to *Elle Decor, Architectural Digest, House Beautiful*, among other magazines nationally and internationally.

Advertising clients include Shade Store, Marriott Hotels, Williams Sonoma, Cowtan and Tout, Sub Zero/Wolf and others. Mr. Piasecki has photographed monographs for designer/architects Peter Pennoyer and Katie Ridder, Steven Gambrel, Juan Montoya, Thom Filicia, Cullman & Kravis, and Timothy Corrigan. His work can be appreciated in two design Books: "*The New Naturalists: Inside the Homes of Creative Collectors*", and "*More is More: Memphis, Maximalism, and New Wave Design"*. It can also be found regularly in *Architectural Digest*, *Clever and Domino*, *Dwell*, *Wallpaper*,* and *Elle Décor*.

14. Based in New York, Mr. Johnson began his career as an art director with Martha Stewart Living and *Everyday Food*. He later transitioned to photography after being on sets for photoshoots and his lifelong interest in images. Today, Mr. Johnson is an accomplished interior design photographer as well as a travel, food, still life, and commercial photographer. His photographs appear frequently in publications such as *Architectural Digest, Bon Appetit, Conde Nast Traveler, Dwell, Elle Décor, Gather Journal, New York Magazine, and WSJ Magazine*. He also shoots for many architects, interior designers, and hotels.

15. William Waldron is a professional photographer who resides in New York City and the Hudson Valley. He has been a passionate photographer since childhood and spent his spare time in a basement darkroom. Mr. Waldron was



COPYCAT LEGAL PLLC
113 N. SAN VICENTE BLVD., SUITE 232 • BEVERLY HILLS, CA 90211
TELEPHONE (877) 437-6228

educated at the University of Minnesota and the Brooks Institute of Photography in Santa Barbara, California. He moved to New York in 1981 determined to work for the legendary photographer Art Kane. After some years working as a photo assistant in New York, in 1985 he traveled to northern Mexico and photographed both Tarahumara Indians and the Mennonites of Chihuahua. Returning to New York with a determination to earn a living taking photographs, his pictures began to draw assignments from influential magazines and commercial clients in the United States and Europe. Cultivating a keen interest in interior spaces, Mr. Waldron became an internationally known interiors photographer. His work regularly appears in magazines such as *Elle Decor, Architectural Digest, Vogue, The New York Times, and Vanity Fair* amongst many others. Mr. Waldron's personal work is largely concerned with the vernacular forms of the inhabited landscape, and the inherently sensuous nature of quietude. His photographs often contemplate the quiet and occasionally lonely spaces of introspection and illustrate his idea that the height of beauty invariably contains a hint of melancholy. Mr. Waldron's work is in numerous private and corporate collections.

16. Ms. Peffley is an interior, lifestyle, celebrity, and travel photographer (with a side of fashion, food, beauty, product, and wellness). Based in Los Angeles, California, she has a BFA in photography and a creative career

background that includes working as an interior design assistant and a photo assistant/digital tech in her early career. Her photographs appear frequently in publications such as Architectural Digest, Vogue, Target, West Elm, The Jungalow, Minnetonka, Harper's Bazaar, HGTV, Marie Clare UK, Domino, Netflix, Clare V, Lonny Magazine, Rue Magazine, JCrew, California Home and Design, InStyle Germany, Birkenstock, Sunset Magazine, Pottery Barn, C Magazine, Dwell, Sephora, People Magazine, *Kamille Magazine (Sweden), Family Circle,* Youth To The People*, Style Me Pretty, The Jungalow, MyDomaine, Byrdie, WhoWhatWear, Fragments Identity,* Bloomingdales, Old Navy, S. Harris Home, Marc Jacobs Beauty, Elizabeth and James, Jimmy Choo, Nordstrom, 7FAM, Frye, Essie, a variety of celebrities, fashion designers, jewelry designers, and interior designers.

17. Kelly Marshall is a New York based photographer specializing in interiors, travel and portraiture. She is a regular contributor to the Wall Street Journal and The New York Times. Ms. Kelly's clients include CB2, Pottery Barn, Ebay, T Brand Studio, Architectural Digest and Bon Appetite Magazine. Her work has been exhibited at MOAD: The Museum of The African Diaspora, Southern Exposure, PhotoVille & Rush Arts. Kelly is a collected artist of The Rockefeller Foundation and a 2018 Lit List awardee by Authority Collective.

18. Mr. Wallander created a professional interior photograph of a kitchen

range with Plaintiff's internal reference name being "OT2355810" (the "First Photograph").

19. Mr. Wallander is the owner of the First Photograph and has remained the owner at all times material hereto.

20. Mr. Piasecki created two (2) professional interior photographs of various kitchen spaces titled with Plaintiff's internal reference name being "OT1253648" (the "Second Photograph") and "OT2213944" (the "Third Photograph").

21. Mr. Piasecki is the owner of the Second Photograph and the Third Photograph and has remained the owner at all times material hereto.

22. Mr. Johnson created four (4) professional interior photographs with Plaintiff's internal reference name being "OT1279448" (the "Fourth Photograph"), "OT1279451" (the "Fifth Photograph"), "OT1279457" (the "Sixth Photograph"), and "OT1279458" (the "Seventh Photograph").

23. Mr. Johnson is the owner of the Fourth Photograph, Fifth Photograph, Sixth Photograph, and Seventh Photograph and has remained the owner at all times material hereto.

24. Mr. Waldron created a professional interior photograph with Plaintiff's internal reference name being "OT1218069" (the "Eighth Photograph").

25. Mr. Waldron is the owner of the Eighth Photograph and has remained the owner at all times material hereto.

26. Ms. Peffley created two (2) professional photographs with Plaintiff's internal reference name being titled "OT2169568" (the "Ninth Photograph") and "OT2169579" (the "Tenth Photograph").

27. Ms. Peffley is the owner of the Ninth Photograph and the Tenth Photograph and has remained the owner at all times material hereto.

28. Ms. Marshall created four (4) professional photographs with Plaintiff's internal reference name being "OT2423304" (the "Eleventh Photograph"), "OT2423309" (the "Twelfth Photograph"), "OT2423317" (the "Thirteenth Photograph"), and "OT2428976" (the "Fourteenth Photograph").

29. Ms. Marshall is the owner of the Eleventh Photograph, Twelfth Photograph, Thirteenth Photograph, and Fourteenth Photograph and has remained the owner at all times material hereto.

30. The Second Photograph, Third Photograph, Fourth Photograph, Fifth Photograph, Sixth Photograph, Seventh Photograph, Ninth Photograph, Tenth Photograph, are collectively referred to herein as the "Timely Registered Photographs."

31. The Eighth Photograph, Eleventh Photograph, Twelfth Photograph, Thirteenth Photograph, and Fourteenth Photograph are collectively referred to

herein as the "Not Timely Registered Photographs."

32. The First Photograph, Second Photograph, Third Photograph, Fourth Photograph, Fifth Photograph, Sixth Photograph, Seventh Photograph, Eighth Photograph, Ninth Photograph, Tenth Photograph, Eleventh Photograph, Twelfth Photograph, Thirteenth Photograph, and Fourteenth Photograph are collectively referred to herein as the "Work."

33. Attached hereto as **Exhibit "A"** is a spreadsheet which identifies each photograph comprising the Work, the corresponding US Copyright Office registration number for such photograph, and one or more screenshots of the alleged infringement of such photograph.

34. Each photograph comprising to the Work was registered by its respective photographer/owner with the Register of Copyrights and was assigned a registration number thereby. True and correct copies of each Certificate of Registration pertaining to the Work is attached hereto as **Exhibit "B."**

35. For all times relevant to this action, Plaintiff and the above-named photographer(s) were parties to one or more written agreements whereby such photographer(s) conveyed to Plaintiff certain exclusive rights in the Work, including but not limited to the exclusive right to reproduce the Work in copies and the exclusive right to distribute copies of the Work to the public by sale and/or licensing. Such written agreement(s) likewise convey the exclusive right to


COPYCAT LEGAL PLLC
113 N. SAN VICENTE BLVD., SUITE 232 • BEVERLY HILLS, CA 90211
TELEPHONE (877) 437-6228

pursue any infringements of the Work, whether such infringements arose prior to execution of the written agreement(s) or thereafter. As such, Plaintiff is entitled to institute and maintain this action for copyright infringement. See 17 U.S.C. § 501(b).

## III. Defendants' Unlawful Activities

36. Snyder owns and operates a home improvement store featuring kitchen, bath, hardware, outdoor, and plumbing products with four locations in California.

37. Snyder advertises/markets its business through its website (https://www.snyderdiamond.com/), social media (e.g., https://www.facebook.com/SnyderDiamond/, https://www.instagram.com/snyderdiamond/?hl=en, and https://www.pinterest.com/snyderdiamond/), and other forms of advertising.

38. Viking Range owns and operates several kitchen and home brands including La Cornue and Viking.

39. Viking Range advertises/markets its business through its websites (e.g., https://vikingrange.com/ and https://compositionbrands.com/), social media (e.g., https://www.facebook.com/Viking/#, https://www.instagram.com/vikingrange/, https://www.pinterest.com/vikingrange/, https://x.com/VikingRange,


COPYCAT LEGAL PLLC
113 N. SAN VICENTE BLVD., SUITE 232 • BEVERLY HILLS, CA 90211
TELEPHONE (877) 437-6228

https://www.youtube.com/user/VikingRangeCorp, and https://www.instagram.com/lacornueusa), other forms of advertising.

40. At all times relevant hereto, Defendants maintained a contractual relationship whereby, upon information and belief, Snyder buys various kitchen products from Viking Range and Viking Range distributes various photographs that were then published by Defendants in connection with the marketing of Snyder's business.

41. On June 10, 2025 (after Mr. Wallander's above-referenced copyright registration of the First Photograph), Snyder displayed and/or published the First Photograph (after Viking Range distributed such to Snyder) on Snyder's website, webpage, social media, and/or printed media as a means of advertising, promoting, and/or marketing their businesses.

42. On multiple dates after Mr. Piasecki, Mr. Johnson, and Ms. Peffley's above-referenced copyright registration of the Timely Registered Photographs, Viking Range displayed and/or published the Timely Registered Photographs on Viking Range's website, webpage, social media, and/or printed media as a means of advertising, promoting, and/or marketing its business.

43. On multiple dates before Mr. Waldron and Ms. Marshall's above-referenced copyright registration of the Not Timely Registered Photographs, Viking Range displayed and/or published the Not Timely Registered Photographs

on Viking Range's website, webpage, social media, and/or printed media as a means of advertising, promoting, and/or marketing its business.

44. True and correct copies of screenshots of Defendants' websites, webpages, social media, and/or printed media, displaying the copyrighted Work, are included in Exhibit "A" hereto.

45. Defendants are not and have never been licensed to use or display the Work. Defendants never contacted Plaintiff to seek permission to use the Work in connection with their websites, webpages, social media, and/or printed media – even though the Work that was copied is clearly professional photography that would put Defendants on notice that the Work was not intended for public use.

46. Defendants utilized the Work for commercial use.

47. Upon information and belief, Defendants located a copy of the Work on the internet (or, in the case of Snyder, received such from Viking Range) and, rather than contact Plaintiff to secure a license, simply copied the Work for their own commercial use.

48. Through its ongoing diligent efforts to identify unauthorized use of its photographs, Plaintiff first discovered Defendants' unauthorized use/display of the Work on October 28, 2023. Following Plaintiff's discovery, Plaintiff notified Defendants in writing of such unauthorized use.

49. All conditions precedent to this action have been performed or have

been waived.

**COUNT I – COPYRIGHT INFRINGEMENT**
(Snyder)

50. Plaintiff re-alleges and incorporates paragraphs 1 through 49 as set forth above.

51. The First Photograph is an original work of authorship, embodying copyrightable subject matter, that is subject to the full protection of the United States copyright laws (17 U.S.C. § 101 *et seq.*).

52. Mr. Wallander owns a valid copyright in the First Photograph, having registered the First Photograph with the Register of Copyrights.

53. Plaintiff has standing to bring this lawsuit and assert the claim(s) herein as it has sufficient rights, title, and interest to such copyrights (as Plaintiff was conveyed the above-described exclusive rights to reproduce and distribute the First Photograph by the subject photographer(s)).

54. As a result of Plaintiff's reproduction, distribution, and public display of the First Photograph, Snyder had access to the First Photograph prior to its own reproduction, distribution, and public display of the First Photograph on its website, webpage, social media, and/or printed media.

55. Synder reproduced, distributed, and publicly displayed the First Photograph without authorization from Plaintiff.


COPYCAT LEGAL PLLC
113 N. SAN VICENTE BLVD., SUITE 232 • BEVERLY HILLS, CA 90211
TELEPHONE (877) 437-6228

56. By its actions, Snyder infringed and violated Plaintiff's exclusive rights in violation of the Copyright Act, 17 U.S.C. § 501. Snyder's infringement was either direct, vicarious, and/or contributory.

57. Snyder's infringement was willful as it acted with actual knowledge or reckless disregard for whether its conduct infringed upon Plaintiff's copyright. Snyder clearly understands that professional photography such as the First Photograph is generally paid for and cannot simply be copied from the internet.

58. Plaintiff has been damaged as a direct and proximate result of Snyder's infringement.

59. Plaintiff is entitled to recover its actual damages resulting from Snyder's unauthorized use of the First Photograph and, at Plaintiff's election (pursuant to 17 U.S.C. § 504(b)), Plaintiff is entitled to recover damages based on a disgorgement of Snyder's profits from infringement of the First Photograph, which amounts shall be proven at trial.

60. Alternatively, and at Plaintiff's election, Plaintiff is entitled to statutory damages pursuant to 17 U.S.C. § 504(c), in such amount as deemed proper by the Court.

61. Pursuant to 17 U.S.C. § 505, Plaintiff is further entitled to recover its costs and attorneys' fees as a result of Snyder's conduct.

62. Snyder's conduct has caused, and any continued infringing conduct will continue to cause, irreparable injury to Plaintiff unless enjoined by the Court. Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiff is entitled to a permanent injunction prohibiting infringement of Plaintiff's exclusive rights under copyright law.

**WHEREFORE**, Plaintiff demands judgment against Snyder as follows:

a. A declaration that Snyder has infringed Plaintiff's copyrights in the First Photograph;

b. A declaration that such infringement is willful;

c. An award of actual damages and disgorgement of profits as the Court deems proper or, at Plaintiff's election, an award of statutory damages for the First Photograph;

d. Awarding Plaintiff its costs and reasonable attorneys' fees pursuant to 17 U.S.C. § 505;

e. Awarding Plaintiff interest, including prejudgment interest, on the foregoing amounts;

f. Permanently enjoining Snyder, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries and assigns, and all those in

active concert and participation with Snyder, from directly or indirectly infringing Plaintiff's copyrights or continuing to display, transfer, advertise, reproduce, or otherwise market any works derived or copied from the First Photograph or to participate or assist in any such activity; and

g. For such other relief as the Court deems just and proper.

## COUNT II – VICARIOUS COPYRIGHT INFRINGEMENT
(Viking Range)

63. Plaintiff re-alleges and incorporates paragraphs 1 through 49 as set forth above.

64. As evidenced above, Snyder infringed and violated Plaintiff's exclusive rights in violation of the Copyright Act, 17 U.S.C. § 501.

65. As Snyder's source for the kitchen products it sells, Viking Range has the right and ability to control the infringing acts of Snyder yet declined or failed to stop Snyder from engaging in its infringing activity. Indeed, Snyder could not have published the subject webpages without the approval and consent of Viking Range.

66. Upon information and belief, Viking Range obtained a direct financial benefit from Snyder's infringing activities.

67. As a direct and proximate result of Viking Range's vicarious copyright infringement, Plaintiff has been damaged. "In the context of copyright law, vicarious liability extends beyond an employer/employee relationship to cases in which a defendant has the right and ability to supervise the infringing activity and also has a direct financial interest in such activities." Oppenheimer v. Scarafile, Civil Action No. 2:19-cv-3590-BHH, 2020 U.S. Dist. LEXIS 213742, at *11 (D.S.C. Nov. 16, 2020) (quotation marks and citations omitted). "In order to establish vicarious liability, a copyright owner must demonstrate that the entity to be held so liable: (1) possessed the right and ability to supervise the infringing activity; and (2) possessed an obvious and direct financial interest in the exploited copyrighted materials." Id. (citing Nelson-Salabes, Inc. v. Morningside Dev., LLC, 284 F.3d 505, 513 (4th Cir. 2002)). "Under a theory of vicarious liability, a defendant who 'has the right and ability to supervise the infringing activity and also has a direct financial interest in such activities' is similarly liable." CoStar Grp., Inc. v. LoopNet, Inc., 373 F.3d 544, 550 (4th Cir. 2004) (quoting Gershwin Publ'g Corp., 443 F.2d at 1162). See also, e.g. Broad. Music, Inc. v. Evie's Tavern Ellention, Inc., No. 8:11-cv-2056-T-17TBM, 2011 U.S. Dist. LEXIS 137720, at *5-8 (M.D. Fla. Nov. 30, 2011)


COPYCAT LEGAL PLLC
113 N. SAN VICENTE BLVD., SUITE 232 • BEVERLY HILLS, CA 90211
TELEPHONE (877) 437-6228

("Because Defendants, Evie's and Evanoff, benefited from the performances and admitted they owned, controlled, managed, and operated Evie's, they are vicariously liable for the infringement."); LaTele TV C.A. v. Telemundo Communs. Grp., LLC, No. 12-22539-CIV-ROSENBAUM, 2013 U.S. Dist. LEXIS 43488, at *32 (S.D. Fla. Mar. 26, 2013) ("[P]leading facts sufficient to pierce the corporate veil is not required in order to state a cause of action for vicarious copyright infringement.").

68. Viking Range's infringement was willful. Viking Range clearly understands that professional photography is generally paid for and cannot simply be copied from the internet. Plaintiff has been damaged as a direct and proximate result of Viking Range's infringement.

**WHEREFORE**, Plaintiff demands judgment against Viking Range as follows:

a. An award of actual damages and disgorgement of profits as the Court deems proper or, at Plaintiff's election, an award of statutory damages for the First Photograph;

b. Awarding Plaintiff its costs and reasonable attorneys' fees pursuant to 17 U.S.C. §§ 505 and 1203(b)(5);

c. Awarding Plaintiff interest, including prejudgment interest, on the foregoing amounts;

d. Permanently enjoining Viking Range, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries and assigns, and all those in active concert and participation with Viking Range, from directly or indirectly further violating Plaintiff's copyrights by further displaying or distributing the First Photograph; and

For such other relief as the Court deems just and proper.

**<u>COUNT III – COPYRIGHT INFRINGEMENT</u>**
(Viking Range)

69. Plaintiff re-alleges and incorporates paragraphs 1 through 49 as set forth above.

70. Each photograph comprising the Timely Registered Photographs is an original work of authorship, embodying copyrightable subject matter, that is subject to the full protection of the United States copyright laws (17 U.S.C. § 101 *et seq.*).

71. Mr. Piasecki owns a valid copyright in the Second Photograph and the Third Photograph, having registered each such photograph with the Register of Copyrights.

72. Mr. Johnson owns a valid copyright in the Fourth Photograph, Fifth Photograph, Sixth Photograph, and Seventh Photograph, having registered each such photograph with the Register of Copyrights.

73. Ms. Peffley owns a valid copyright in the Ninth Photograph and the Tenth Photograph, having registered each such photograph with the Register of Copyrights.

74. Plaintiff has standing to bring this lawsuit and assert the claim(s) herein as it has sufficient rights, title, and interest to such copyrights (as Plaintiff was conveyed the above-described exclusive rights to reproduce and distribute the Timely Registered Photographs by the subject photographer(s)).

75. As a result of Plaintiff's reproduction, distribution, and public display of the Timely Registered Photographs, Viking Range had access to the Timely Registered Photographs prior to its own reproduction, distribution to Snyder, and public display of the Timely Registered Photographs on its website, webpage, social media, and/or printed media.

76. Viking Range reproduced, distributed to Snyder, and publicly displayed the Timely Registered Photographs without authorization from Plaintiff.

77. By its actions, Viking Range infringed and violated Plaintiff's exclusive rights in violation of the Copyright Act, 17 U.S.C. § 501. Viking Range's infringement was either direct, vicarious, and/or contributory.

78. Viking Range's infringement was willful as it acted with actual knowledge or reckless disregard for whether its conduct infringed upon Plaintiff's copyright. Notably, Viking Range itself utilizes a copyright disclaimer on its website ("Viking Range, LLC © 2026 Part of the Composition Brands Luxury Portfolio"), indicating that Viking Range understands the importance of copyright protection/intellectual property rights and is actually representing that it owns each of the photographs published on its website. See, e.g., Bell v. ROI Prop. Grp. Mgmt., LLC, No. 1:18-cv-00043-TWP-DLP, 2018 U.S. Dist. LEXIS 127717, at *3 (S.D. Ind. July 31, 2018) ("[T]he willfulness of ROI's infringement is evidenced by the fact that at the bottom of the webpage on which the Indianapolis photograph was unlawfully published appeared the following: 'Copyright © 2017.' By placing a copyright mark at the bottom of its webpage that contained Mr. Bell's copyrighted Indianapolis Photograph, Mr. Bell asserts ROI willfully infringed his copyright by claiming that it owned the copyright to everything on the webpage; John Perez Graphics & Design, LLC v. Green Tree Inv. Grp., Inc., Civil Action No. 3:12-cv-4194-M, 2013 U.S. Dist. LEXIS 61928, at *12-13 (N.D. Tex. May 1, 2013) ("Once on Defendant's website, Defendant

asserted ownership of Plaintiff's Registered Work by including a copyright notice at the bottom of the page. Based on these allegations, the Court finds Plaintiff has sufficiently pled a willful violation….”). Viking Range clearly understands that professional photography such as the Timely Registered Photographs are generally paid for and cannot simply be copied from the internet.

79. Plaintiff has been damaged as a direct and proximate result of Viking Range’s infringement.

80. Plaintiff is entitled to recover its actual damages resulting from Viking Range’s unauthorized use of the Timely Registered Photographs and, at Plaintiff’s election (pursuant to 17 U.S.C. § 504(b)), Plaintiff is entitled to recover damages based on a disgorgement of Viking Range’s profits from infringement of the Timely Registered Photographs, which amounts shall be proven at trial.

81. Alternatively, and at Plaintiff’s election, Plaintiff is entitled to statutory damages pursuant to 17 U.S.C. § 504(c), in such amount as deemed proper by the Court.

82. Pursuant to 17 U.S.C. § 505, Plaintiff is further entitled to recover its costs and attorneys’ fees as a result of Viking Range’s conduct.

83. Viking Range’s conduct has caused, and any continued infringing conduct will continue to cause, irreparable injury to Plaintiff unless enjoined by the Court. Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. § 502,

Plaintiff is entitled to a permanent injunction prohibiting infringement of Plaintiff's exclusive rights under copyright law.

**WHEREFORE**, Plaintiff demands judgment against Viking Range as follows:

a. A declaration that Viking Range has infringed Plaintiff's copyrights in the Timely Registered Photographs;

b. A declaration that such infringement is willful;

c. An award of actual damages and disgorgement of profits as the Court deems proper or, at Plaintiff's election, an award of statutory damages for the Timely Registered Photographs;

d. Awarding Plaintiff its costs and reasonable attorneys' fees pursuant to 17 U.S.C. § 505;

e. Awarding Plaintiff interest, including prejudgment interest, on the foregoing amounts;

f. Permanently enjoining Viking Range, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries and assigns, and all those in active concert and participation with Viking Range, from directly or indirectly infringing Plaintiff's copyrights or continuing to display,

transfer, advertise, reproduce, or otherwise market any works derived or copied from the Timely Registered Photographs or to participate or assist in any such activity; and

g. For such other relief as the Court deems just and proper.

**COUNT IV – COPYRIGHT INFRINGEMENT**
(Viking Range)

84. Plaintiff re-alleges and incorporates paragraphs 1 through 49 as set forth above.

85. Each photograph comprising the Not Timely Registered Photographs is an original work of authorship, embodying copyrightable subject matter, that is subject to the full protection of the United States copyright laws (17 U.S.C. § 101 *et seq.*).

86. Mr. Waldron owns a valid copyright in the Eighth Photograph, having registered such photograph with the Register of Copyrights.

87. Ms. Marshall owns a valid copyright in the Eleventh Photograph, Twelfth Photograph, Thirteenth Photograph, and Fourteenth Photograph, having registered each such photograph with the Register of Copyrights.

88. Plaintiff has standing to bring this lawsuit and assert the claim(s) herein as it has sufficient rights, title, and interest to such copyrights (as Plaintiff


COPYCAT LEGAL PLLC
113 N. SAN VICENTE BLVD., SUITE 232 • BEVERLY HILLS, CA 90211
TELEPHONE (877) 437-6228

was conveyed the above-described exclusive rights to reproduce and distribute each photograph comprising the Not Timely Registered Photographs by the subject photographer(s)).

89. As a result of Plaintiff's reproduction, distribution, and public display of the Work, Viking Range had access to the Not Timely Registered Photographs prior to its own reproduction, distribution, and public display of the Not Timely Registered Photographs on Viking Range's website, webpage, social media and/or printed media.

90. Viking Range reproduced, distributed, displayed, and/or publicly displayed the Not Timely Registered Photographs without authorization from Plaintiff.

91. By its actions, Viking Range infringed and violated Plaintiff's exclusive rights in violation of the Copyright Act, 17 U.S.C. § 501. Viking Range's infringement was either direct, vicarious, and/or contributory.

92. Plaintiff has been damaged as a direct and proximate result of Viking Range's infringement.

93. Plaintiff is entitled to recover its actual damages resulting from Viking Range's unauthorized use of the Not Timely Registered Photographs

and, at Plaintiff's election (pursuant to 17 U.S.C. § 504(b)), Plaintiff is entitled to recover damages based on a disgorgement of Viking Range's profits from infringement of the Not Timely Registered Photographs, which amounts shall be proven at trial.

94. Viking Range's conduct has caused, and any continued infringing conduct will continue to cause, irreparable injury to Plaintiff unless enjoined by the Court. Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiff is entitled to a permanent injunction prohibiting infringement of Plaintiff's exclusive rights under copyright law.

**WHEREFORE**, Plaintiff demands judgment against Viking Range as follows:

a. A declaration that Viking Range has infringed the copyrights in the Not Timely Registered Photographs;

b. An award of actual damages and disgorgement of profits as the Court deems proper;

c. Awarding Plaintiff its costs pursuant to 17 U.S.C. § 505;

d. Awarding Plaintiff interest, including prejudgment interest, on the foregoing amounts;

e. Permanently enjoining Viking Range, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries and assigns, and all those in active concert and participation with Viking Range, from directly or indirectly infringing Plaintiff's copyrights or continuing to display, transfer, advertise, reproduce, or otherwise market any works derived or copied from the Not Timely Registered Photographs or to participate or assist in any such activity; and

f. For such other relief as the Court deems just and proper.

DATED: October 28, 2026. **COPYCAT LEGAL PLLC**

By: /s/ Lauren M. Hausman
Lauren M. Hausman, Esq.
Attorney for Plaintiff
OTTO ARCHIVE, LLC